```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

| | | |
|---|---|---|
| Frank C. Brown, Jr., | : | |
| Plaintiff, | : | |
| v. | : | Case No. 2:10-cv-352 |
| Russ Parish, et al., | : | JUDGE EDMUND A. SARGUS, JR. |
| | | Magistrate Judge Kemp |
| Defendants. | : | |

<u>REPORT AND RECOMMENDATION</u>
<u>AND ORDER</u>

Plaintiff, Frank C. Brown, Jr., a state prisoner, filed this action under 42 U.S.C. §1983 alleging that by denying him access to certain of his legal materials, the defendants adversely affected his ability to pursue legal actions relating either to the fact or the conditions of his confinement. In an Opinion and Order filed on July 16, 2010 (Doc. #6), the Court concluded that the complaint adequately stated a claim for infringement of the First Amendment right of access to the courts, noting that Mr. Brown "may or may not have suffered actual prejudice resulting from the alleged actions of the defendants. However, Plaintiff's allegations are sufficient to state a claim upon which relief may be granted."

Defendants answered, and subsequently filed a motion for judgment on the pleadings, raising the defenses of lack of exhaustion of the prison grievance procedure and qualified immunity. That motion is fully briefed. For the following reasons, it will be recommended that the motion for judgment on the pleadings be granted as to all defendants except defendant Timmerman-Cooper. The Court will also issue a ruling on certain other motions or, as appropriate, recommend a disposition of

those other motions by the District Judge.

I.

The basic facts underlying Mr. Brown's complaint are set forth in some detail in the Court's July 16, 2010 Opinion and Order and will not be repeated here unnecessarily. It is sufficient, for purposes of this Report and Recommendation, to say that Mr. Brown's claim arises out of what happened to his legal material in 2009 and 2010 as he was transferred around the Ohio prison system. He asserts that these transfers and the resultant six-month delay in being able to access his legal materials caused him to be unable to work on a federal habeas corpus case he had filed in the Northern District of Ohio, to file a state court mandamus case, and file suit challenging the conditions of his confinement.

The motion for judgment on the pleadings is based primarily on Mr. Brown's own description of the way in which he pursued grievances relating to the deprivation of access to his legal materials. In his complaint (Doc. #3), Mr. Brown recites that "I filed a grievance directly to the Chief Inspector in Columbus against the Warden, Deb Timmerman-Cooper, Russ Parrish, UMA, and Major Stanley Taylor for this cause." His complaint also states that his grievance was denied on grounds that he did not follow the correct procedure for grieving these actions, starting with the informal complaint stage at the institutional level. Copies of his grievance and the Chief Inspector's response are attached to the complaint.

In his response, Mr. Brown asserts that he could not have followed the usual grievance procedure because the person to whom that grievance should have been directed was defendant Parrish's supervisor, but that position had been eliminated. He did send a letter to the Warden, and he attached a copy of that letter to his response, and also claims that he was told he had to file a

grievance with the Deputy Warden of Operations. At the time, that position was being filled by either Unit Manager Parrish or Major Taylor, so it would not have been proper to submit a grievance to them about their own actions. Additionally, he asserts that he raised this issue in a state court case and Warden Timmerman-Cooper was made aware of the issue through that filing. In their reply, the defendants do not take issue with any of Mr. Brown's factual assertions, so the Court will assume their truth for purposes of ruling on the motion for judgment on the pleadings. They do, however, dispute that Mr. Brown's attempts to exhaust the prison grievance procedure were adequate. The Court will address this argument below.

## II. Legal Standard

A motion for judgment on the pleadings filed under Fed.R.Civ.P. 12(c) attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss. Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir.1979). In ruling upon such motion, the Court must accept as true all well-pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479 F.2d 478, 480 (6th Cir.1973). The same rules which apply to judging the sufficiency of the pleadings apply to a Rule 12(c) motion as to a motion filed under Rule 12(b)(6); that is, the Court must separate factual allegations from legal conclusions, and may consider as true only those factual allegations which meet a threshold test for plausibility. See, e.g., Tucker v. Middleburg-Legacy Place, 539 F.3d 545 (6th Cir. 2008), citing, inter alia, Bell Atlantic Corp. v. Twombly 550 U.S. 544 (2007). It is with these standards in mind that the motion for judgment on the pleadings must be decided.

III. <u>Discussion</u>

The Prison Litigation Reform Act requires a prisoner to exhaust any available grievance process within the prison system prior to filing suit about the matter which was or should have been the subject of such a grievance.  It provides, in 42 U.S.C. §1997e(a), that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  This exhaustion requirement is "mandatory," <u>see Woodford v. Ngo</u>, 548 U.S. 81, 84 (2006), and the Supreme Court has held that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..." <u>Id</u>. at 90.

In Ohio, the prison grievance procedure is laid out in Ohio Administrative Code §5120-9-31.  It provides for a three-step process to be followed.  First, the inmate must file an informal complaint within fourteen days of the occurrence, which must be directed "to the direct supervisor of the staff member ... responsible for the particular subject matter of the complaint." Once that step has been completed, the inmate must direct a notification of grievance to the inspector of institutional services.  Finally, assuming the inmate is still dissatisfied with the response, an appeal must be taken to the office of the chief inspector.  O.A.C. §5120-9-31(K).  If the grievance is against the warden or the inspector of institutional services, it must be filed directly with the office of the chief inspector. O.A.C. §5120-9-31(M).  Such a grievance must provide details about the Warden's direct personal involvement in the matter complained of.

One of the defendants in this case is the Warden of the London Correctional Institution, Deb Timmerman-Cooper.  Because

the exhaustion requirements differ for the Warden and the other defendants, the Court will analyze the exhaustion issue separately as to Warden.

Defendants concede that the grievance which Mr. Brown filed against Warden Timmerman-Cooper was properly directed to the Chief Inspector under O.A.C. §5120-31-9(M).  They argue, however, that it was insufficient to exhaust remedies with respect to the Warden because it did not specify how she was personally involved in the actions of others who allegedly denied Mr. Brown access to his legal materials.  That is both a requirement of the Ohio Administrative Code and a requirement to state a claim against a supervisory official under §1983.  See Monell v. Department of Social Services, 436 U.S. 658 (1978).

It is important to recall that Mr. Brown's complaint about the denial of access to his legal materials after he was returned to the London Correctional Institution on November 29, 2009, was that he was not permitted to take his legal material to his housing area immediately because some of the defendants (but not the Warden) insisted on looking through it to make sure it was all his.  The material was then placed in a storage locker and then transferred to defendant Russ Parrish's office.  As of the date of the filing of the complaint (it was signed on April 21, 2010), Mr. Brown was still being denied access to those materials.

Although the body of the complaint does not say much about the Warden's involvement in these actions, Mr. Brown's grievance filed with the Chief Inspector, which is attached to his complaint (the electronic copy is nearly illegible, but there is an original copy available in a hard file maintained by the Clerk's office which is much more readable) states the following. The grievance is dated February 20, 2010, at a time when his property was still in the property vault, and it begins by

alleging that "Deb Timmerman-Cooper [is] violating my constitutional right of access to the court by keeping my personal and general legal materials locked up in the R & T vault and refusing to give it back." He mentions her several more times in the grievance, stating at one point that "Warden Cooper is most definitely aware that I am being denied access, have been denied access and am still being denied access to all the legal material ...." As relief, he asked that she be told that she "cannot nor is permitted to engage in this sort of conduct at any time and there can be ramifications. She is knowingly violating a constitutional rule, and DRC policy and OAC codes."

  Defendants argue that, notwithstanding this language, the grievance was insufficient to put the Chief Inspector on notice as to the particulars of how the Warden was involved in the alleged constitutional deprivation. They reason that because the grievance stated, in part, that the Warden must have been aware of the problem because of a class action which Mr. Brown filed in the Ohio Supreme Court, and because there is no proof that the Warden personally received any of the filings in that case that addressed this issue, its allegations about her involvement are unsupported. The applicable regulation, however, does not call for evidentiary support for a grievance; it simply requires that the grievance "show that the warden or inspector of institutional services was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation." Mr. Brown's grievance does that. Whether what he said in the grievance is true is an entirely different question, but the grievance clearly lays out the violation and the Warden's alleged complicity in it, or, at the very least, her personal knowledge and approval of it. Since the requirements in the regulation are stated in the disjunctive, the latter is sufficient to meet the standard set forth there. The

Court therefore concludes that, as to Warden Timmerman-Cooper, Mr. Brown properly exhausted the prison grievance procedure.

As to the other defendants, Mr. Brown makes no argument, and apparently concedes, that he did not exhaust the grievance procedure as to any of them except defendants Russ Parrish and Stanley Taylor.  He makes two arguments about Mr. Parrish - that he did not have a direct supervisor to whom a grievance could be directed, and that he temporarily filled the job of Deputy Warden of Operations, which is where Mr. Brown was told to file that grievance.  He claims the latter (but not the former) was also true about Major Taylor.  Defendants assert that even if these statements are taken as true, there is no excuse for Mr. Brown's having bypassed the institutional grievance process altogether as to these two defendants.

In this instance, the Court agrees with defendants.  The applicable code section, O.A.C. §5120-931(K), does not designate the direct supervisor of the responsible prison official as the only person to whom a first-step grievance can be directed.  It also permits the grievance to be submitted to the "department most directly responsible for the particular subject matter of the complaint."  Mr. Brown has not explained why he did not even attempt to submit an informal grievance in that way.  If, as he alleges, and as the response he received from the Chief Inspector (also attached to the complaint) appears to indicate, that department was headed by the Deputy Warden for Operations, and that position was either vacant or being temporarily filled by either Unit Manager Parrish or Major Taylor, he could possibly have proceeded to the second step of the process, which is filing a grievance with the Inspector of Institutional Services and explaining why he skipped the first step.  Any of these actions would have brought the matter to the attention of the local institution in a way that would have forced it to respond in some

way. The Court does not read the grievance procedure as permitting individual inmates to decide unilaterally that these steps in the process may be unavailable to them due to temporary changes in circumstances or positions within a particular institution, and allowing them to proceed directly to litigation without having made even a good faith attempt to exhaust the grievance process.

The case law, from the Supreme Court on down, is replete with language stressing the mandatory nature of exhaustion of an available prison grievance procedure. See, e.g., Woodford v. Ngo, supra; see also Carr v. Lavender, 2011 WL 4467670, *3 (S.D. Ohio Sep 26, 2011)("The requirement to exhaust administrative remedies is mandatory"), adopted and affirmed 2011 WL 5834967 (S.D. Ohio Nov 21, 2011). Further, the Court of Appeals has specifically held that

> a jail's grievance policies need not explicitly provide for all possible scenarios in which a prisoner may seek to file a grievance. Instead, when a reasonable policy is in place, but is silent or vague in a particular circumstance, courts must look to see whether the prisoner has attempted to satisfy the requirements of the policy.

Napier v. Laurel County, Ky., 636 F.3d 218, 223 (6th Cir. 2011). Here, Mr. Brown did not make such an effort with respect to Unit Manager Parrish or Major Taylor. Consequently, he did not exhaust available remedies, as required by the PLRA, with respect to any defendant named in this case except the Warden, and that conclusion mandates the dismissal of his claims against those other defendants.

The only other argument defendants raise in support of their motion (apart from the more general argument about revoking Mr. Brown's *in forma pauperis* status due to what defendants claim is his abuse of the litigation process) is a qualified immunity

defense. That argument is completely focused on the issue of whether any of the defendants acted reasonably in enforcing a property restriction dealing with the amount of legal materials an inmate may possess. But, as the complaint, the Court's prior interpretation of it, and Mr. Brown's response make clear, this case is not about that restriction, but about the intentional actions of the defendants in preventing him from having access to all of his legal material for many months, even though it was being kept at his institution. Since defendants have not advanced any argument about this claim, judgment on the pleadings on grounds of qualified immunity would not be appropriate.

IV. Other Motions

There are two other motions pending in this case which fall within the jurisdiction of the Magistrate judge to determine in the first instance. They are Mr. Brown's motion for leave to supplement and to strike (#55) and defendants' motion for an extension of time (#62). The former motion does not appear to be specific to this case and requests no relief that would affect the recommendation being made on the motion for judgment on the pleadings. The latter motion is moot. Both motions will be denied.

The other pending motions are all motions which must be finally ruled on by the District Judge because they ask, in one form or another, for some type of interim injunctive relief. Should the Court adopt this Report and Recommendation, all of those motions (including #s 25, 41, 42, 46 and 56) would be affected to some extent, at least to the extent that they request relief in this case (many of these motions were filed in identical form in both this and other cases brought by Mr. Brown), and they should be considered jointly in all of his pending cases in light of this and other recommendations which are being submitted to the District Judge. That should be done

in a separate order, so those motions are not addressed by this Report and Recommendation.

### V. Recommendation and Order

Based on the above discussion, it is recommended that the defendants' motion for judgment on the pleadings (#38) be granted as to all defendants except Warden Timmerman-Cooper and denied as to her. It is further ordered that Mr. Brown's motion for leave to supplement and to strike (#55) and defendants' motion for an extension of time (#62) are denied.

### VI. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge